Oral argument, not subject to the defendant's preside and associate's elegy. Your Honor, it is my pleasure to introduce to the court Kimberly Hain, who took on the representation of John Poole as part of the University Mission of Law School's Federal Public Litigation Committee. You've been grateful for the court's permission along with the entire university.  the defendant's attorney, and the defendant's attorney in this case, and the hearsay incriminations through the testimony of Sergeant Gardner, had a substantial and injurious effect on the verdict. Moreover, they were in plain violation of the Confrontation Clause. The Michigan Court of Appeals had an opportunity to remedy that violation. All it had to do was engage in a reasonable application of the factors set forth by the Supreme Court in Delaware v. Van Arsdale. The court did not engage in that analysis. Had it, it would have recognized that the key evidence in the case against Mr. Poole were the hearsay incriminations of his co-defendant. For that reason, Your Honors, we request that this court reverse the district court and grant Mr. Poole's habeas petition. Now, there are three certified issues on appeal, and I have a limited time, so I'd like to rest with respect to the third issue on the papers, and I will address the first two, and potentially the third, as time permits. Now, the Michigan Court of Appeals does not deny, and neither did the district court for the Eastern District of Michigan, that a Confrontation Clause occurred. So the precise issue with respect to the first issue certified on appeal is whether the Michigan Court of Appeals erred unreasonably in finding that the violation of Mr. Poole's rights was harmless error. You know, before we get to that, isn't it true that Crawford doesn't apply, Confrontation doesn't apply to statements that aren't for the truth of the matter asserted? That's an exception, right? Yes, Your Honor. I can answer. So the idea here is this testimony is not consistent with the government's theory of the case, and it seems like you could make a pretty good argument that the whole point of it was to show Varner's motivation for bargaining. I mean, if you take what's said for its truth, it actually undermines the government's theory of the case, and it seems to me, and it seems to me from the way the case was tried, that this was about establishing Varner's motive to bargain. Your Honor, I can address that question, but I did speak with Mr. Sands prior to argument, and the state has chosen to waive the Confrontation Clause, the existence of the Confrontation Clause as an issue before this court. Okay, so I'd still like to hear the answer to my question, whether there was really a Confrontation Clause violation. Yes, Your Honor, there was a Confrontation Clause violation because it was offered against Mr. Poole for three reasons. First, the statements were admitted, even if it was the state's intent to offer them only with respect to Mr. Varner. They were offered against Mr. Poole as well, because as the Supreme Court held in Bruton v. United States, once statements come in against a defendant, those statements are imprinted on the jury's minds. So much so that the only thing that can get rid of the prejudice of such a confession is an opportunity for cross-examination. Secondly, Your Honor, the state points to one statement that was exculpatory, in a sense, if Mr. Poole's trial counsel had raised a self-defense theory. But Mr. Poole's trial counsel did not raise a self-defense theory. It was not mentioned in closing argument. There were no jury instructions. And so to the degree that it might have been exculpatory in a different case or might have supported Mr. Poole's case in a different case, it did not in the particular circumstances of Mr. Poole's case. The third reason, Your Honors, is that it is impossible to separate this statement coming in as substantive evidence against Mr. Varner, but not against Mr. Poole. If the State was offering these statements to prove that Mr. Varner was the mastermind, they can only do so if they establish, to continue the State's metaphor, that Mr. Poole was the henchman for the mastermind. It's impossible to separate them. They did come in against Mr. Poole, and there was a confrontation. The reason I think this is relevant is the less likely there's a real confrontation clause violation, the less likely you're going to have prejudice, right? I mean, you would agree the opposite's true, for example. The more egregious the confrontation clause violation, the more likely it is to be prejudicial. So I'm not sure we can say, even if technically only prejudice is in front of us, that we don't pay attention to this. But the other feature of this that's just funny is, in terms of prejudice now, is this inserts self-defense into the case. I mean, that exonerates Poole. But what was established was that it was a murder charge that was being presented against him. There was no self-defense theory. And so the determination was whether or not he had acted to commit the murder. And in that case, where the jury was not instructed to consider self-defense as an option. No, I don't know that that's right. It's beyond a reasonable doubt that he committed the murder. And then the government puts forward a theory, and the jury's asked to believe, beyond a reasonable doubt, whether that theory proves it. And if you have inserted into the case, well, wait a second, no. What was going on here was there was some self-defense going on. That definitely is relevant to the state of mind. It doesn't matter whether there's an instruction or not. It undermines the government's path beyond a reasonable doubt path. They're asking the jury to walk. Your Honors, there was a statement made to that effect. There were also multiple other statements that were made to the effect that Mr. Poole was responsible for committing the murder. And with respect to those statements, it is clear that there was a confrontation caused by – When you say there was a statement to that effect, the only statement we're talking about that matters, isn't it just this sentence? Varner said that two days after the killing, Poole confessed to him that he had shot Covington, albeit because he thought Covington was reaching for a gun. Isn't that the whole statement that we care about? There are multiple statements actually entered in Sergeant Gardner's testimony. There were statements that he had also – that he had been paid to commit the murder, etc. And so, yes, there was a statement that – Wait, wait. Gardner said that? You're saying Gardner said the payment? Oh, no. I'm sorry. He did not say that about me. Okay. We're on Gardner, right? Yes. Tell me what is relevant about Gardner's supposed confrontation clause violation testimony beyond the sentence I read. So the sentence is just, Varner said that two days after the killing, Poole confessed to him that he had shot Covington, albeit because he thought Covington was reaching for a gun. That's what we're debating, right? That is a statement that Sergeant Gardner made, yes, Your Honor. And that's the only statement for which there could be prejudice? Yes. Those are the statements. Okay. So I'm saying it undercuts the government's theory of the case. But ultimately, there was a statement made that he had committed the shooting, and when we're looking at substantial and injurious effect, we're looking at the whole course of not only was there an issue as a self-defense, but there was an issue that he was placed there, that Mr. Varner, through his statements, placed Mr. Poole at the shooting when Mr. Poole was arguing that he was not even at the shooting. And so when we're looking at the substantial injurious effect, we're asking, do those statements, do they serve, first, to make Mr. Poole at the scene? And they do. And they do so in a way that is powerfully incriminating and devastating under the Supreme Court's analysis in Bruton. Secondly, we're asking, when looking at substantial and injurious effect, do these statements also serve to corroborate other evidence at trial that might not have been believed? So there is not only the harm from the violation itself, but the harm that then permeates throughout the whole course of the trial. And, Your Honors, if we look at Vasquez v. Jones, it is clear that statements Are we allowed to consider how often the Gardner testimony is referred to in closing arguments? And so how much, I mean, you said permeates the case. Yes. It's not my sense that it did permeate the case in terms of argument by the lawyers. No. Am I wrong about that? You're correct, Your Honor. It's not about argument by lawyers, to clarify my point. It's that it permeated the case because it served to corroborate all of the other testimony at trial that directly incriminated Mr. Poole that might not have been believed. So if we turn to Vasquez v. Jones, this was a Am I allowed to consider in the prejudice inquiry whether the government, for example, relies on the disputed evidence at closing? Isn't that something I can consider in terms of its prejudicial effect on the trial? Yes, Your Honor, you can. But also we have to consider the degree of corroborating effect here. And to that I would point to Vasquez v. Jones because in that case this court granted habeas relief where it found that the testimony in violation of the Confrontation Clause had a substantial injurious effect because that testimony was the only testimony directly incriminating the defendant that was not impeached and that was not questioned. Here, or rather in Mr. Vasquez's case, there were statements by a third-party witness that he had committed the crime. Those were unquestioned. There were two other pieces of testimony at trial, statements that had been recanted, statements prior to trial, exactly like Ms. Coddington's testimony in Mr. Pohl's case. And also statements that were impeached there by virtue of drug and alcohol abuse. Here, with respect to Mr. Higginbotham, by virtue of the fact that he was openly seeking a cooperation agreement. And under those circumstances, this court found that that hearsay violation in Mr. Vasquez's case had a substantial and injurious effect. If that had a substantial and injurious effect in Mr. Vasquez's case, the substantial and injurious effect here was even greater. And I say that for two different reasons, Your Honors. First, the testimony... How about the fact that it not only undercut the theory as to Pohl, it undercut the theory as to Varner? I mean, it undercuts both theories. Yes. Because Varner doesn't say... He says there was a murder. He says Pohl's did it, albeit in self-defense. But, of course, he doesn't say anything about paying for it. So it totally undercuts the theory that Varner did it. Mr. Varner, in his statements through Sgt. Gardner, does not say that he did not pay Mr. Pohl to shoot. I believe there's no discussion as to payment. But regardless of whether... No, but he says he shot Covington in self-defense. That's not a theory that I paid him. I didn't say I paid him $300. There's no way that's compatible. Well, they paid him $300, but Pohl was having second thoughts, and only when a gun was pulled on him did he shoot. Right? I mean, the statement is incompatible with both theories of the case, as to Varner and Pohl. Yes, Your Honor. But the statement serves to corroborate testimony that was that Mr. Varner paid Mr. Pohl to kill Mr. Gardner. It doesn't corroborate the paying. It just corroborates the killing, but under a different theory. And it corroborates the being there. It corroborates the being there by a person who has a self-interest in someone else being pinned with the murder. It does corroborate, Your Honor. Under Vasquez v. Jones, it does corroborate other testimony because, as is court held in Vasquez, where the testimony is testimony that has not been impeached, it allows the jury to take as true that questionable testimony that it might not otherwise have taken. So the fact of the matter is here, under this Court's precedence, Mr. Varner's statements through Sergeant Gardner not only had their own incriminating effect on their own and to what degree this Court finds there to be an incriminating effect, but there was a second incriminating effect under Vasquez. That incriminating effect was serving to corroborate testimony that might not have been believed. The testimony of Mr. Coddington, or excuse me, Ms. Coddington and Mr. Higginbotham, that there was a murder, that there was a payment to kill. So turning to why there is a substantial injurious effect here given the statements by Mr. Poole and their corroborating effect, the statements in Vasquez v. Jones were statements by a third-party witness. Here, the statements by Mr. Poole, or excuse me, by Mr. Varner, were the statements of his very own co-defendant, and thus they were objectively more prejudicial. This Supreme Court has said in Bruton v. United States that's... Even when they exonerate the person making the statement? Even when they exonerate a person to a degree that was not discussed at trial, but to the degree that they exonerate and they also serve to corroborate other testimony. They cause that testimony to be believable that it might not otherwise have been. If we look at the absence... Do you think Vasquez has any bearing in this case if one draws the conclusion that this statement had zero corroborating effect except for the idea that Poole was there and Poole pulled the trigger? I think in Vasquez, the conclusion from that case as applied to here is that there was a corroborating effect because in Vasquez, the testimony was not discussed in that case as though the testimony had to match up perfectly in order for there to be corroboration. The concept that this Court discussed in Vasquez of the tiebreaker witness was that it caused testimony to be believed that would not have been believed because it went to the material fact of the defendant's guilt and so of the defendant's participation in the shooting or the murder, to put it more precisely. So here, there was a statement by Mr. Varner through Sergeant Gardner that Mr. Poole was the one with the gun that morning. Those statements by Amanda Coddington and by Mr. Higginbotham were corroborated and allow the jury to believe those statements taken as true in Vasquez. For those reasons, Your Honors, there was a substantial and injurious effect here allowing this Court under AEDPA to grant habeas relief. Turning to ineffective assistance of... Does AEDPA apply to the prejudice inquiry? Excuse me? Does AEDPA apply to the prejudice inquiry we've been talking about? AEDPA does apply to the question of whether there was a substantial injurious effect. It does apply to the entirety of the Confrontation Clause issue. So turning to ineffective assistance of counsel... So I've asked you a lot of questions, but the red light's been on for a while, so why don't we do about 4 or 5 minutes, and then I'll give the same time to your friend on the other side. But it'll probably be about 4 minutes. No, I'm saying you can keep going, but you're going to be interrupted in a little bit if you don't finish in about 4 minutes. With the ineffective assistance of counsel issue, it was unreasonable to decide that counsel's failure to object was deficient. That is because the entire Court's analysis was premised on the erroneous assumption that only a Crawford objection was available. With respect to the prejudice prong, which this Court reviews de novo, if there was a substantial injurious effect, there was certainly a reasonable probability of a different outcome. What if we think there wasn't a Confrontation Clause violation because it wasn't for the truth of the matter asserted? It was to show the motivation to bargain. Then you don't have ineffective assistance for not raising objection to a non-meritorious defense or non-meritorious claim. There were statements that came in against Mr. Poole. Those statements were ones made by his co-defendant. Bruton v. United States does hold, and it does not make reference to whether or not those statements have to be ones that were wholly incriminatory or wholly exculpatory, either or, once statements are made by a co-defendant that accused the defendant of committing the crime. Does Bruton apply to statements not for the truth of the matter asserted? Bruton, the language in Bruton indicates that once statements have been made, regardless of whether they're offered for the truth of the matter asserted, the point is that in the jury's minds, those statements are so damning that nothing can remove the taint except cross-examination. The reason why is because ultimately it doesn't matter to the jury whether or not something was offered for the truth of the matter asserted or not. The point is that the jury is unable to get rid of that taint, so much so that in Bruton, the Supreme Court held that limiting instructions don't work. Nothing works besides cross-examination. For those reasons, Your Honors, we would ask that this Court reverse the district court and grant Mr. Poole habeas relief. Thank you. All right, thank you. We'll get your full rebuttal time. We'll hear from the State. Your Honors, Matthew Nelson of Warner Norcross and Judd on behalf of Warden McLaren. You have the unusual case this morning where you have a person from the University of Michigan Law Clinic representing the petitioner and a SAG representative, a Special Assistant Attorney General, not the State itself, representing the warden. To dive right into your question, Judge Sutton, with regard to if there was no corroborating effect except with regard to the fact that Mr. Poole was there, does Vasquez . . . Nelson pulled the trigger. Excuse me, and that he pulled the trigger under Vasquez. Would Vasquez apply here? No, we don't believe Vasquez applies here because, frankly, the key issue in this case is not Mr. Gardner's testimony. It's Ms. Coddington's testimony. And, in fact, the conviction here rose and fell on Ms. Coddington's testimony. I think you could take all the rest of the evidence with regard to Sergeant Gardner who testified for, I believe it was 20 pages in the course of this multiple-page trial. Let me ask you this question then. Let's say the Gardner testimony had Varner saying something different. And what it said was, for some reason, Varner laid out the exact theory of the case, the Coddington theory of the case. So what you have is, everything's the same about the case, except that the sentence isn't the sentence I quoted in the sentence that was introduced. But it's Varner said, I paid Poole $300 to commit the murder, and he did. How does that case work out in terms of prejudice? Your Honor, I still believe that in this particular case, under Brecht, that would continue to be harmless error. And here's why. The theory of the case from the defense at trial... Wouldn't Vasquez be problematic from my hypothetical? Your Honor, I think Vasquez would be certainly something that had to be addressed. But, if I may, the real issue here that makes this distinct, there's a very important factual distinction between this case and Vasquez. And that is, in this case, the theory of the defense was, there was a massive police conspiracy to get Mr. Varner, because Mr. Varner had won a civil rights action against the state. And you can see this throughout the testimony. You can see this in the closing argument. You can even see the hints of it in the opening argument. And so their entire theory was that the police essentially harassed and forced Ms. Coddington to make up this very detailed testimony during the course of the preliminary examination to get Mr. Poole and Mr. Varner bound over. And that she then told the truth when she came to trial. And that it was because of this police manipulation and because of one particular police officer allegedly raping her, that she had lied in giving this, as I said, very detailed testimony. I submit to you that in this case, had the jury reached the conclusion that Ms. Coddington was credible with regard to her allegations of police harassment and of rape, Mr. Poole would be a free man. They clearly did not. And the reasons that they did not have nothing to do with Mr. Gardner's actual testimony. And even in your hypothetical, I would submit that it would be a closer case, but looking over the entire record, that you would have to conclude that the jury, even if Mr. Gardner had testified, Sergeant Gardner had testified, that Mr. Varner had told him that he had paid Mr. Poole to do this. Even had that happened, when you look at the entirety of the testimony, that the jury still would have concluded that Ms. Coddington's preliminary examination testimony was accurate and her testimony at trial was not. And the reason for that is fourfold. First of all, Mr. Higginbotham testified that Mr. Varner had confided in him that he had, in fact, that they had a scheme to make up a false complaint against the police. Second, there was significant evidence submitted from both the arresting officers, excuse me, from the interviewing officers with regard to her demeanor and Ms. Coddington's demeanor during the course of these interviews and what she said. Third, you have the jury's own perceptions of Ms. Coddington's testimony at trial. And Ms. Coddington, unlike Sergeant Gardner, testified for the better part of a day at the trial. She was the key witness throughout the trial. And then finally, you have all of the evidence that came in with regard to the fact that Ms. Coddington, for example, made numerous phone calls to the police officer from whom she was allegedly receiving harassment, that no one who saw the two of them together on the day of the alleged rape noticed anything amiss. All of that testimony taken together led the jury to conclude that Ms. Coddington's preliminary examination testimony was truthful. And I submit to you, had they reached the other conclusion, had they reached the conclusion that Ms. Coddington's trial testimony was credible, no matter what any other witness had said, Mr. Poole would be a free man. So are you suggesting that the government's case would not have been weakened in the absence of Gardner's testimony? No, Your Honor. I think the government's case would have been weakened, but not significantly so. And when we look at the Van Arstel factors, the fifth factor talks about the strength of the government's case. And because Gardner's testimony is only tangentially related, I would suggest that the overall effect of it would have been relatively minor. Had Sergeant Gardner not testified at all, I think you would have seen the same result in this case for the reasons that I just explained. Ultimately, I think that that analysis of harmlessness under Brecht is the only issue that the Court really needs to address to resolve the Confrontation Clause and Strickland issues. If the Court concludes that this error, that the admission of Sergeant Gardner's testimony was harmless under the Brecht standard, then it would be very difficult to suggest that it met prejudice under the Strickland standard, much less Strickland plus AEDPA. And I would submit, Your Honors, that your standard of review with regard to the Michigan Court of Appeals' decision with regard to prejudice is not de novo, as my sister counsel has suggested, but rather that it is the double deference due to Strickland plus AEDPA. And here's why. Even though the Michigan Court of Appeals was less than precise in its recitation of the Strickland standard, its actual analysis of prejudice was under Chapman, so that it said, we have found that the error here was harmless beyond a reasonable doubt. Well, the Chapman harmless beyond a reasonable doubt error standard is obviously much more difficult for the State to reach than the standard under Strickland of probability. So consequently, because the Michigan Court of Appeals concluded that the error was harmless beyond a reasonable doubt under Chapman, it obviously had to have met the Strickland standard, and that decision is then entitled to the additional AEDPA deference that you have to consider whether the decision was so out of bounds that no reasonable judge could have reached it. Are you prepared to concede that Gardner's testimony had an injurious effect on the petitioner? No, Your Honor. I'm not ready to concede that there was a substantial and injurious effect. I asked about injurious. Injurious. You'll concede that, won't you? I would concede, Your Honor, yes, that it had a, I mean, there was an incremental addition to the level of proof provided by Gardner's testimony. So the question is whether it was substantial. Correct, Your Honor. Injurious. And I think that in terms of looking back into what the Michigan Court of Appeals said, they found here, obviously, that this was harmless beyond a reasonable doubt. Obviously, this court applies Brecht in this context, and there's no question here that it did not have a substantial injurious effect, whereas I indicated the entirety of this case was focused on, the entirety of the defense was focused on whether or not there was this massive police conspiracy to frame Mr. Varner and Mr. Poole. Unless the Court has any further questions, thank you. No, thank you, Mr. Nelson. Oh, did you have a question? No. Okay, thank you, Mr. Nelson. Ms. Hange. I'd like to address one of the points that opposing counsel made in his argument. The trial court, their trial was focused on Coddington's testimony, which raises the question of why did that testimony need to be believed? Clearly, there were two contradictory sets of statements, one made during preliminary examination, one made during trial. Why should it be believed? First, in Vasquez v. Jones, this court did note that it need not defer to a state court fact finder's determination of credibility and also cited to Fulcher v. Motley in doing so as a threshold basis. The reason why Ms. Coddington's testimony needed to be believed or could have been believed was because of Mr. Varner's testimony through Sergeant Kenneth Gardner. It corroborated those statements because it, too, was a direct incrimination of Mr. Poole, just like Ms. Coddington's testimony. And so because of that corroborating effect, because Ms. Coddington's testimony could be believed primarily because of Mr. Varner's testimony, it did have a substantial injurious effect. Yes, there were other statements in the record, but in Fulcher v. Motley, this court was very clear that just because there are other corroborating statements, it doesn't take away from the fact that a confrontation clause violation can be the most corroborating statement and that the degree of corroboration does make a difference. In Fulcher v. Motley, this... But the corroborating statement, you have to take everything that comes with it. I mean, I realize that it's most corroborating if you focus on just presence and pulling the trigger, but, you know, it's one sentence, and it comes with a very different theory of what happened. And that just seems to me to... I'm not saying it eliminates corroboration. That's not my point. I just would say I don't understand how one couldn't say it minimizes it, particularly when it also undermines the theory of what Varner was doing. It's because the jury has to decide in addition to... Let me restart. It's clear from Mr. Varner's statements that if we take them to be true that Mr. Poole was at the crime scene, the question then becomes, as Your Honor has raised, self-defense versus murder. There were two sets of testimony that directly incriminated Mr. Poole, both Amanda Coddington's, as the State has pointed out, that said that Mr. Poole had been paid to murder, and also Mr. Higginbotham's testimony that said Mr. Poole had been paid to murder. And so, yes, it is true that Mr. Varner's testimony may have implicated a self-defense issue, but the greater point here is that it corroborated insofar as Mr. Poole was there and Mr. Poole was the one shooting the gun and he had some relationship to Mr. Varner, it corroborated two sets of testimony to that degree that both said that Mr. Poole was the one that actually committed a murder and was paid to do so. So, Your Honors, I can actually say that my time is up. For the reasons that we've outlined and with respect to Vasquez v. Jones, we would move that this Court reverse the district court and grant Mr. Poole habeas relief. Thank you. Ms. Eng, your command of the case law and the facts that apply to this case are extraordinary. Your oral argument today was stunning. You may not win, but good effort. Thank you. Well, I only wish I could say you went to Ohio State. But there's still time, isn't there? You haven't graduated yet. You can get an LLM or something, right? Well, you haven't graduated. Finish your last... I teach there. We'd love to have you. Anyway, thank you. I agree entirely with Judge Black. I'm sure Judge Keith agrees as well. Yeah, Judge Sutton, I'd just like to say on behalf of the Court that you've done an excellent job. Well prepared. I know you've got your supervising attorney there, but I want the record to reflect that the University of Michigan is turning out some great students out there. Well, and I have to add, Ohio State's doing pretty well, but today Michigan wins. That was really quite good. And Mr. Nelson, thank you for your argument, which is helpful as well. And Mr. Torres, it's always great to have you here, and I'm sure you were helpful. So thank you very much. Thank you. That was terrific. Okay, we'll work our way through it. The case will be submitted, and the clerk may adjourn court.